E-FILED
Wednesday, 26 September, 2007  03:49:22 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| HECTOR SANDOVAL, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 04-cv-4056 |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## O R D E R

Before the Court is Petitioner's Motion to Vacate, Set
Aside or Correct his sentence [Doc. 1] brought pursuant to 28
U.S.C. § 2255.  The Court appointed counsel to represent
Petitioner, and the appointed counsel filed an Amended Motion to
Vacate [Doc. 13] on Petitioner's behalf along with an
accompanying Memorandum [Doc. 14].  However, Petitioner
requested that his Attorney be removed and his original Petition
be reinstated.  This request was granted and Petitioner
proceeded *pro se*.  The Government filed a Response [Doc. 20] to
Petitioner's original Petition and Petitioner filed a Traverse
[Doc. 22] to the Response.  In addition, Petitioner has filed a
Motion to Strike the Government's Response. [Doc. 24.]  For the
following reasons Petitioner's § 2255 Motion is DENIED.

# I.
## BACKGROUND

On February 18, 1999, Petitioner was charged in a two count indictment by a federal grand jury in the Central District of Illinois.  The indictment charged Petitioner with kidnapping in violation of 18 U.S.C. §§ 1201(a)(1) and with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c).

At trial Frank Rivas, a government witness, testified that he had been kidnapped by Petitioner's brother, Marcelo Sandoval, because of a drug deal gone bad.  [Doc. 20 at 5.]  Rivas testified that Petitioner assisted Marcelo in the kidnapping by using a gun to keep Rivas from fleeing during the time Rivas was held in Chicago.  [Doc. 20 at 8.]   Petitioner was arrested when the Chicago City Police entered Marcelo's house where Rivas was held.  Inside the house they found two handguns near where Petitioner was arrested.

Petitioner testified at trial and stated that he had no involvement in the kidnapping.  [Doc. 20 at 12.]  Petitioner asserted that he was only at Marcelo's house at the time of the arrest to see Marcelo's children and that he believed that Rivas was just a houseguest.  [Doc. 20 at 12.]   However, at trial there was evidence that Petitioner had been involved in the kidnapping for more than a day.  In particular, there was

evidence that Petitioner took Rivas with him when Petitioner went to run errands.  And, Petitioner carried a firearm while he took Rivas out.  Furthermore, Rivas's wife, who came looking for Rivas, saw Petitioner at Marcelo's house before the police arrived.

Petitioner was convicted by a jury on both counts of the indictment on August 26, 2002.  Petitioner filed a motion for a new trial which was denied.

Petitioner received the following sentence: 121-month term of imprisonment for kidnapping, 120-month consecutive term of imprisonment for using and carrying a firearm during and in relation to a crime of violence, and three-year term of supervised release on both counts to run concurrently.

Petitioner filed a timely notice of appeal on December 26, 2002.  A separate attorney represented him on appeal and argued that: (1) The prosecutor's statements during opening, closing, and sentencing constituted prosecutorial misconduct; (2) The Court plainly erred in its use of an uncertified interpreter; (3) The indictment was insufficient as a matter of law; and (4) Venue was improper.  On October 20, 2003, the Seventh Circuit dismissed each of Petitioner's arguments and affirmed the decision of this Court.

## II.
## LEGAL STANDARD

The law in this Circuit is clear:  § 2255 motions are not intended to substitute for direct appeals or enable an issue to be appealed a second time.  Reed v. Farley, 512 U.S. 339, 354 (1994).  In order to obtain relief under § 2255 a petitioner must show that the error asserted is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice."  Barnickel v. U.S., 113 F.3d 704, 705 (7th Cir. 1997).

Constitutional errors may not be alleged for the first time in a § 2255 motion if they could have been raised at trial or on direct appeal unless good cause for the procedural default and actual prejudice resulting from the errors are shown. Bontkowski v. U.S., 850 F.2d 306, 313 (7th Cir. 1988). Moreover, non-constitutional errors may not be asserted if they were not raised on appeal but could have been, regardless of any cause or prejudice shown.  Id.  Such a non-constitutional assertion may only be raised for the first time in a § 2255 motion if it is demonstrated that a court's refusal to consider the claim "would lead to a fundamental miscarriage of justice." McCleese v. U.S., 75 F.3d 1174, 1178 (7th Cir. 1996).

4

**III.**
**ANALYSIS**

Petitioner argues that he is entitled to relief under §
2255 because: (1) His counsel was ineffective for failing to
call alibi witnesses; (2) The government failed to notify the
Mexican Embassy of his arrest; (3) His Fifth and Sixth Amendment
rights to a fair trial were violated under Schlup v. Delo, 513
U.S. 298, 315 (1995); and (4) The prosecuting attorney violated
the Citizens Protection Act.  This Court will address
Petitioner's claims in their respective order.

**1.  Ineffectiveness of Counsel.**

Petitioner claims that his counsel was ineffective by not
interviewing and calling to the stand two alibi witnesses on
Petitioner's behalf.  [Doc. 2 at 25.]  To satisfy an
ineffectiveness of counsel claim a petitioner must demonstrate
that his counsel's help was below an objective standard of
reasonableness and that the insufficient conduct prejudiced him.
Strickland v. Washington, 466 U.S. 668, 687 (1984).  However,
courts should show great deference to the performance of counsel
and only find counsel ineffective if his errors were so severe
that he was not functioning as guaranteed by the Sixth
Amendment.  Id.

Generally, claims of ineffective assistance of trial
counsel are properly raised for the first time in a § 2255

motion.  McCleese, 75 F.3d at 1178.  However, a petitioner must offer some extrinsic evidence to support his claim of ineffective assistance of counsel in a § 2255 motion when represented by different counsel on appeal.  Id.

The only extrinsic evidence offered by Petitioner is his signed affidavit stating that he gave his trial counsel the name and address of two witnesses, Geronmio Cruz and Carlos Rodriguez, who would have testified as to his whereabouts in the morning and afternoon of December 1, 1997 - the day that he was arrested.  [Doc. 22, p. 7.]

In response, the government submitted a signed affidavit from Petitioner's counsel stating that Petitioner did not give him the address of Cruz and did not give him the name or address of Rodriguez.  [Doc. 32 at 3-4.]

Normally, an evidentiary hearing would be necessary to determine whether Petitioner indeed gave his counsel the names of the two witnesses in order to determine whether "his counsel's help was below an objective standard of reasonableness."  Strickland, 466 U.S. at 687; see also Raygoza v. Hulick, 474 F.3d 958 (7th Cir. 2007)(defense counsel's failure to investigate murder defendant's alibi claim was worthy of habeas relief where petitioner had affidavits from seven alibi witnesses).  However, in order to merit such an evidentiary hearing, a motion under § 2255 must be "accompanied

by a detailed and specific affidavit which shows that the
petitioner had actual proof of the allegation going beyond mere
unsupported assertions." Barry v. U.S., 528 F.2d 1094, 1101
(7th Cir. 1976). "Mere unsupported allegations cannot sustain a
petitioner's request for a hearing." Aleman v. U.S., 878 F.2d
1009, 1012 (7th Cir. 1989).

In the case at bar, Petitioner's affidavit provides scant
hearsay support for his claim. Petitioner states that he was
told that both witnesses could provide alibi testimony. (Doc.
22 at 7.) However, Petitioner does not provide affidavits or
any other evidence from these alibi witnesses. Instead, the
affidavit merely consists of unsupported assertions made by
Petitioner himself that Cruz's wife "had assured me that if my
counsel called her and her husband to testify . . . she would be
in court with her husband." [Doc. 22 at 7.] Moreover,
Petitioner cites no reason why he was unable to obtain signed
affidavits from Cruz and Rodriguez themselves regarding the
nature and availability of their testimony. As a result, this
Court finds that Petitioner's affidavit is self-serving and thus
insufficient to necessitate an evidentiary hearing on the matter
of his counsel's effectiveness. See Barry, 528 F.2d at 1101.

What is more, even if Petitioner had produced an affidavit
that was signed by the two witnesses themselves he still does
not establish prejudice resulting from his counsel's alleged

ineffectiveness and therefore would still not be entitled to
relief.  See Strickland, 466 U.S. 687.  Prejudice from an
ineffectiveness of counsel may only be found if there "is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 698.

     Petitioner's affidavit does not show prejudice resulting
from his counsel's alleged failure to interview Cruz and
Rodriguez.  The evidence at trial showed that Petitioner was
involved in the kidnapping over a period of more than a single
day.  Petitioner only purports to have an alibi for a brief
period.  The fact that he had an alleged alibi witness for a
brief period of time would not have provided an adequate defense
because it could not have explained his whereabouts during the
entirety of the kidnapping.  As a result, Petitioner was not
prejudiced by his counsel's failure to call the two witnesses.

     For these reasons, Petitioner's affidavit does not
demonstrate that the result of the proceedings would have been
different if his counsel had interviewed and produced Cruz and
Rodriguez as witnesses because their testimony would have in no
way established Petitioner's innocence.  Accordingly,
Petitioner's claim of ineffective counsel is without merit.

**2. The Government's Failure to Notify the Mexican Embassy.**

Petitioner claims that the government violated his rights by not notifying the Mexican Embassy upon his arrest. Applicable international law declares that the authorities of all agreeing nations, including the United States, shall inform a person of his right to notify the embassy of his country of his arrest immediately after he is detained.  Vienna Convention on Consular Relations and Optional Protocol on Disputes ("V.C.C.R."), Art. 36, Dec. 14, 1969, 21 U.S.T. 77.

Petitioner is a Mexican citizen.  [Doc. 2 at 24.]  The record, however, shows no evidence that the government notified Petitioner of his right to contact the Mexican Embassy at any point after his arrest or before his conviction.  Nevertheless, Petitioner's argument fails because he could have raised this argument on appeal and he does not demonstrate that he suffered any prejudice by the failure.

Since filing his claim for relief, our Appellate Court has recently held that Article 36 of the V.C.C.R. does indeed confer a private enforceable right.  Jogi v. Voges, 480 F.3d 822, 834 (7th Cir. 2007)(allowing § 1983 plaintiff to bring a claim for violations of Art. 36 of the V.C.C.R.).  And, it is uncertain whether this conferral of an individual's enforceable rights would apply retroactively to Petitioner.  See, e.g., U.S. v.

9

<u>Flores-Flores</u>, 42 Fed. Appx. 868 (7th Cir. 2002).  However, it is not necessary to answer this question to dispose of Petitioner's claim because Petitioner's claim is procedurally defaulted and he has not demonstrated any prejudice.

Petitioner appears to argue that the failure to notify him amounted to a constitutional error.  Constitutional errors may not be alleged for the first time in a § 2255 motion if they could have been raised at trial or on direct appeal unless good cause for the procedural default and actual prejudice resulting from the errors are shown.  <u>Bontkowski v. U.S.</u>, 850 F.2d 306, 313 (7th Cir. 1988).  In this case, the fact that Petitioner had not been notified of his right to contact the embassy could have been addressed at trial.  <u>See</u>, <u>e.g.</u>, <u>United States v. Chaparro-Alcantara</u>, 37 F.Supp. 1122 (C.D. Ill. 1999).  And, it could have been raised on direct appeal. <u>See</u>, <u>e.g.</u>, <u>United States v. Lawal</u>, 231 F.3d 1045 (7th Cir. 2000).  Because Petitioner failed to raise this argument on direct appeal, his claim is now barred.

Furthermore, while Petitioner may have a private right of action under the V.C.C.R. he does not appear to have a fundamental constitutional right.  Specifically, "the Supremacy Clause does not convert violations of treaty provisions into violations of constitutional rights." <u>Murphy v. Netherland</u>, 116 F.3d 97, 99 (4th Cir. 1997).  Consequently, Petitioner is raising a non-constitutional claim concerning Article 36 of the

10

V.C.C.R. and is therefore only entitled to habeas relief if he can demonstrate that the Court's refusal to hear the claim "would lead to a fundamental miscarriage of justice." McCleese, 75 F.3d at 1178.

Petitioner sets forth no evidence to satisfy this standard and only argues that "there is a reasonable probability that the Mexican Embassy would have favorably defended his rights" if he had been notified of his right to contact the embassy. [Doc. 2 at 24.] The fact that Petitioner might have received better counsel from the Mexican Embassy is mere speculation. Petitioner has not pointed to any statute, regulation, or standard practice on the part of the Mexican Embassy to provide counsel when notified of a citizen's arrest. Petitioner also does not establish that any possible counsel provided by the Mexican embassy would have provided a different defense that would have led to a different outcome. The Federal Public Defender represented petitioner and, as noted *supra*, the only alleged shortcomings in Petitioner's representation did not materially prejudice his ability to put up a defense. As a result, there is no basis for this Court to conclude that the government's alleged violation of the V.C.C.R. led to a "fundamental miscarriage of justice." See McCleese, 75 F.3d at 1178.

Accordingly, this Court finds that Petitioner has not stated basis for relief concerning the government's failure to notify him of his rights under Article 36 of the V.C.C.R.

**3. <u>Schlup</u> Standard.**

Petitioner claims that his sentence should be vacated under <u>Schlup v. Delo</u>, 513 U.S. 298, 315 (1995).

Under <u>Schlup</u>, a petitioner may present a claim of actual innocence for the first time in a habeas petition without showing "cause" or "prejudice" for the procedural default of not previously raising the claim at trial or on appeal. <u>Nwafor v. U.S.</u>, No. 95-3864, 1997 U.S. App. LEXIS 11023, at *2-3 (7th Cir. May 7, 1997). However, "[t]o be credible, such a claim requires . . . new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." <u>Schlup</u>, 513 U.S. at 315. Or, if a petitioner does not produce new evidence of innocence, he may still satisfy the <u>Schlup</u> standard if he shows "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error...." <u>Id.</u> at 316.

In the case at bar, Petitioner argues that he is actually innocent and points to the "inconsistent" testimony of informant Rivas. [Doc. 2 at 21.] In particular, Petitioner argues that

Rivas's testimony was the product of illicit prosecutorial pressure because Rivas initially refused to prosecute the case. [Doc. 2 at 21.]

This argument does not establish Petitioner's innocence. Simply because Petitioner changed his mind does not mean that his testimony was not credible. Rivas could have initially refused to prosecute the case for many reasons – such as a fear of violence against him or his family. Moreover, the jury heard Rivas's testimony, and the testimony challenging his credibility, and nonetheless found Petitioner guilty on both counts despite any weaknesses in Rivas's credibility. When conducting a habeas review, a district court should not disturb a jury's findings regarding witness credibility. Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Berger v. State of Indiana, 991 F.2d 394, 399 (7th Cir. 1993). As a result, the fact that Rivas's testimony was susceptible to a credibility challenge does not present evidence "so strong that a Court cannot have confidence in the outcome of the trial." Schlup, 513 U.S. at 316.

Petitioner also makes numerous other broad allegations that he is actually innocent and must be released under Schlup. Particularly, Petitioner alleges that he was the victim of: (a) Improper jury instruction; (b) Government mismanagement of informant Rivas; (c) Improper admission of evidence; (d)

Improper addition of a conspiracy charge at trial; (e) Knowing use of perjured testimony by the prosecution; and (f) Violation of <u>Giglio v. United States</u>, 405 U.S. 150 (1972), by the government.

Each of the arguments points to alleged improper evidentiary rulings, alleged actions by the prosecutor, and other allegations that only challenge credibility determinations which were made by the jury. In order to establish a claim of actual innocence "(t)he prisoner must show a fair probability that in light of all the evidence, including that which was illegally obtained as well as that which was legally excluded, the trier of facts would have entertained a reasonable doubt of his guilt." <u>Zavesky v. Miller</u>, 79 F.3d 554, 556 (7th Cir. 1996)(internal quotations omitted). Given the considerable evidence that Petitioner was involved in the kidnapping in this case, none of these allegations cause this Court to believe that the jury would have entertained a reasonable doubt of guilt in the face of Petitioner's allegations. Petitioner seeks to challenge the full breadth of evidentiary rulings and prosecutorial statements, all of which are left to the discretion of the trial court, and none of which demonstrate that Petitioner was *actually innocent*. Petitioner's claims thus fail because he produces no new evidence of innocence and also does not demonstrate any evidence of innocence that would make

this Court lose "confidence in the outcome of the trial."  See

Schlup, 513 U.S. at 315-16.

**4.  Violation of Citizens Protection Act.**

Petitioner claims that the prosecuting attorney violated

the Citizen Protection Act of 1998.[1]  Petitioner argues that

---

[1] Some clarity is needed on the statute known as the "Citizens
Protection Act of 1998."  The Citizens Protection Act of 1998
was proposed on March 5, 1998, H.R. 3396, 105th Cong.
(1998)("the Proposed Act").  The Proposed Act listed certain
punishable conduct for prosecutors, provided for a complaint
process, and established a misconduct review board.  The problem
is that on June 16, 1998, the Citizens Protection Act of 1998
was referred to a subcommittee where it died.  See Id.  It was
never brought out of subcommittee and was never passed into law.
The reason for the confusion is that Congressman Joseph McDade,
(no relation to the Court) was able to get a portion of the
Protection Act passed as part of the Omnibus Consolidated and
Emergency Supplemental Appropriations Act.  H.R. 4328, 105th
Cong. § 801 (1998)("Omnibus Act").  This section of the Omnibus
Act was codified as 28 U.S.C. § 530B and addresses only the
ethical standards for attorneys for the Federal Government.
Since then, this section of the Code has been repeatedly
referred to as either the "McDade Amendment" or the "Citizens
Protection Act of 1998."  However, references to the Citizens
Protection Act of 1998 have led to repeated confusion.  While
some Courts have stated that the Citizens Protection Act does
not exist, Allen v. Ashcroft, No. 03-441-MJR, 2006 WL 1882672 *8
(S.D. Ill. July 7, 2006), others have actually cited the
"Citizens Protection Act of 1998."  United States v. Straub, No.
5:99-10 1999 WL 33495606 *3 (N.D. W.Va. June 14, 1999).  This
confusion appears to be promulgated by web sites that are
popular with prisoners and do not clarify that the Proposed Act
was never passed into law. (The Court will refrain from
referencing these web sites.)  And, as a result, prisoners have
mistakenly relied upon the original proposed legislation that
was never enacted when presenting their arguments to a court.
See Fleming v. Westfall, No. 05-2320, 2005 WL 116060 *1 (D. N.J.
2005).  Since the term the "McDade Amendment" appears to be a
popular way to refer to the legislation that was actually
enacted into law, see Federal Prosecutors, State Ethics
Regulations, and the McDade Amendment, 113 Harv. L. Rev. 2080

Assistant U.S. Attorney Allegro improperly solicited the advice of spectators in the courtroom regarding  his trial strategy. [Doc 22 at 4.]  Specifically, Petitioner believes that Attorney Allegro spoke with others in the courtroom about his trial strategy.

According to the relevant statute, U.S. Attorney Allegro is bound by 28 U.S.C.S. 530B(a) which states that a federal prosecutor must follow "State laws and rules . . . to the same extent and in the same manner as other attorneys in that State." See 28 U.S.C.S. 530B(a).  However, this Court is unaware of any State rule against attorneys receiving advice from spectators in the courtroom and Petitioner describes no such rule in his Motion.  Accordingly, there is no basis to conclude that Attorney Allegro violated the relevant statute.

---

(2000), this Court suggests that parties and litigants refer to the legislation that was actually passed as the "McDade Amendment" and refrain from citing proposed legislation that was never enacted into law.

**IV.**
**CONCLUSION**

IT IS THEREFORE ORDERED that Petitioner's Motion to Vacate, Set Aside or Correct his sentence [Doc. 13] brought pursuant to 28 U.S.C. § 2255 is DENIED.  All other pending Motions before the Court are MOOT.

CASE TERMINATED.


ENTERED this  25th  day of September, 2007.


____s/ Joe Billy McDade_____
Joe Billy McDade
United States District Judge